**OUT–A–SIGHT PET CONTAINMENT, INC., Plaintiff**

v.

**RADIO SYSTEMS CORPORATION, Radio Fence Distributors, Inc., and Lori Volwiler, Defendants.**

**Civil Action No. 01–5775.**

United States District Court,
E.D. Pennsylvania.

Aug. 12, 2004.

Ewing Alexander Jr., Gollatz Griffin & Ewing PC, West Chester, PA, William Dunnegan, Perkins & Dunnegan, New York, NY, for Plaintiff.

Joseph A. Woodruff, Terrence O. Reed, Waller, Lansden, Dortch and Davis, Nashville, TN, Thomas J. Bradley, McBreen & Kopko, Philadelphia, PA, Darol H.M. Carr Farr Farr Emerich Sifrit Hackett & Carr PA, David A. Holmes, Farr Farr Emerick Sefrit, Punta Gorda, FL, for Defendants.

## OPINION

POLLAK, Senior District Judge.

On December 3, 2003, I granted in part the motion in limine filed by defendants Radio Systems Corporation ("RSC"), Radio Fence Distributors, Inc. ("RFD"), and RFD president Lori Volwiler (collectively, "defendants") to preclude the testimony of Stephen J. Scherf, the damages expert for plaintiff Out–A–Sight Pet Containment, Inc. ("OAS"). I ruled that Mr. Scherf could offer expert testimony based on OAS's sales projection for fiscal year 2002, but not based on OAS's sales projections for fiscal years 2003 to 2006. I determined that the latter projections, which incorporated a 47 percent annual sales increase, lacked a sufficient factual foundation.

Mr. Scherf subsequently prepared a supplemental expert report ("Supplemental Report"). The damages estimates in the Supplemental Report continued to rely on the 47 percent growth rate, and endeavored to provide new information that supported such a figure. In a memorandum and order dated July 9, 2004, I found that the 47 percent figure, and thus Mr. Scherf's damages estimates, still lacked an adequate factual basis, and granted the defendants' second motion in limine to preclude Mr. Scherf's testimony.

Apparently, my two orders have done little to resolve the issue of OAS's pro-

posed damages testimony, as OAS and RSC have each filed an additional motion regarding damages testimony in this case. With this opinion, I hope to resolve the issue so that this case may proceed.

**OAS's motion**

In its motion, Out–a–Sight requests three forms of relief: (1) clarification of my order of July 9, 2004; (2) reconsideration of the same order; and (3) an order compelling RFD to disclose the amount of its annual sales since 2000 in the northeast United States.

### 1. Motion for clarification

OAS asks the court to "clarify" the order of July 9, 2004, to allow Mr. Scherf to testify "as stated in his Supplemental Report, that OAS had a value of $478,000 as of May 20, 2001 based upon its first year sales projections." On the record before the court, there is no basis for concluding that Mr. Scherf should or should not be permitted to offer that opinion as expert testimony. I would note, however, that this is not what Mr. Scherf stated in his Supplemental Report. What was stated in a footnote, without any further explanation, was as follows: "It should be noted that the discounted cash flows for year one approximate $478,000." If factual support exists for either statement, it is not adequately presented in the Supplemental Report. Accordingly, the order of July 9, 2004, stands as issued, and Mr. Scherf may not testify as proposed in his Supplemental Report.

### 2. Motion for reconsideration

OAS also seeks reconsideration of the decision not to consider to the Supplemental Report's collection of damages estimates based on a range of projected sales growth rates. OAS asks this court to rule on the reasonableness of each of nine growth rates, indicating that Mr. Scherf is prepared to testify to any of nine growth rates between 0 percent and 40 percent, calculated in 5 percent intervals. In its reply brief, OAS suggests that

> [i]f the Court is equipped to conclude that Mr. Scherf lacks 'good grounds' to testify as to the value of OAS based on a 47 percent growth rate, then the Court should be equally equipped to determine whether or not Mr. Scherf has 'good grounds' to testify based upon any lower growth rate. . . .

Reply Memorandum of Plaintiff at 3. In essence, OAS is asking the court to choose the figure that it finds to be most reasonable.

OAS's request is based on a misconception of the relationship between the expert, the proponent of the expert, and the court. It is the obligation of the expert to formulate an opinion based on reliable data and his own expertise. The burden then rests upon the party putting forward the expert opinion to establish its reliability. *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 744 (3d Cir.1994). The court's responsibility is merely to "act[ ] as gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir.2003). For this court to accept OAS's invitation, giving its opinion as to the most reasonable projection, would be to overstep the bounds of both its authority and its expertise.

Even if Mr. Scherf were to advance a damages estimate based on any one of the nine proposed growth rates, I would be compelled to exclude the testimony as not supported by a sufficient factual foundation. As my orders have made clear, the flaw in Mr. Scherf's adoption of a 47 percent growth rate was not that the rate was inherently unreasonable, but that Mr. Scherf failed to provide an adequate factu-

al basis to support its adoption. Whereas the factual support for the 47 percent rate was deemed to be insufficient, support in the Supplemental Report for any one of the alternative growth rates contained therein is nonexistent. Therefore, I will not disturb my July 9 order precluding Mr. Scherf from testifying as proposed in his Supplemental Report—including any testimony based on the alternative damages estimates contained therein.

### 3. Motion to compel discovery

Finally, OAS asks the court to compel RFD to disclose the amount of its annual sales since 2000 in the northeast United States. While it may be that such information is of use to OAS, OAS has not identified any extenuating circumstances that warrant reopening discovery, which closed nearly two years ago. OAS's request will be denied.

### RSC's third motion in limine

In the present motion in limine, RSC seeks an order from the court excluding "any evidence or testimony, lay or expert, offered by [OAS] on the issue of lost profits or other consequential damages based on OAS's business plan to be a 'dealer network.'" It should be noted that courts do not generally exclude testimony in the abstract, instead focusing on testimony that has been specifically proffered by a party. In any event, the blanket exclusion of such testimony is not warranted at this stage.

RSC cites *Hadley v. Baxendale,* 156 Eng. Rep. 145 (1854), and a series of cases applying Tennessee law[1] for the proposition that consequential damages arising out of a breach of contract claim must be

within the reasonable contemplation of the parties at the contract's formation. Citing OAS's 1999 business plan, which suggests that OAS intended to sell pet containment products directly to consumers, RSC claims that it was not within the contemplation of the parties at the time of the Supply Agreement that OAS would seek to create a network of independent dealers. RSC maintains that the dealer network business model is materially different than the one the parties envisioned for OAS at the formation of the Supply Agreement, and hence that OAS cannot recover damages arising from OAS's inability to establish a dealer network. Therefore, RSC argues, any damages testimony based on such a business model is irrelevant and thus inadmissible.

■ Even assuming that the two business models—direct sale and dealer network—are as "materially different" as RSC suggests, *Hadley* and its progeny could only preclude damages testimony with respect to OAS's breach of contract claim. These cases provide no basis for excluding testimony in connection with the two other claims asserted by OAS: (1) intentional interference with contractual relations, against RFD and Ms. Volwiler; and (2) violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, against all defendants.[2] As long as these remain viable claims, testimony concerning consequential damages is clearly relevant.

■ RSC also renews its argument that testimony as to OAS's consequential damages is irrelevant, because under Tennessee law, no recovery can be had for loss of profits that are uncertain or speculative.

1. Pursuant to the terms of the Supply Agreement, Tennessee law governs the contract aspects of this case.

2. RSC appears to have acknowledged as much, arguing in an earlier pleading that Mr.

Scherf's testimony as to alleged damages for breach of contract should be precluded "[i]f OAS's antitrust claim against RSC cannot be established." RSC's Reply Brief in Support of Its Motion to Exclude the Expert Testimony of Stephen J. Scherf at 7.

As I noted in my memorandum and order of December 3, 2003, however, a plaintiff need not prove the exact amount of damages; where damages can be proved to a reasonable certainty, the plaintiff may recover. *See Pinson & Assocs. Ins. Agency, Inc. v. Kreal*, 800 S.W.2d 486, 488 (Tenn. Ct.App.1990). In the December 3, 2003, memorandum and order, I also found that OAS's alleged lost profits could be proved to a reasonable certainty if founded on OAS's sales projections for fiscal year 2002. Therefore, the broad preclusion of testimony as to OAS's consequential damages would be inappropriate at this stage.

**Conclusion**

Accordingly, in the accompanying order the motions of both parties will be denied.

**ORDER**

For the reasons stated in the accompanying opinion, it is hereby ORDERED that:

(1) Out-a-Sight's Motion for Clarification and Reconsideration of the July 9, 2004 Order and to Compel Defendant Radio Fence Distributors to Provide Discovery Concerning Its Growth Rates for Dealer Sales in the Northeast States (Docket # 99) is DENIED.

(2) Radio Systems Corporation's Motion in Limine to Exclude Any Testimony as to Plaintiff's Damages (Docket # 100) is DENIED.